## JAMES E. MATTHEWS, Respondent v. CLAUD HAMILTON et al., Appellants.

1. DEBTS BY AGENT OF TRUSTEES.—An agent of trustees clothed with a special trust, cannot bind such trustees for the payment of any debt except such as may arise in connection with the business pertaining to such trust.

2. TRUST IN SPECIAL FUND AGENCY.—Where trustees held their powers for the purpose of handling a special trust fund, an agent of such trustees cannot create or assume any debts to be paid by his principals except out of such trust fund.

Appeal from the Third Judicial District Court.

The facts are stated in the opinion of the court, and also in the case of *Kahn* v. *Hamilton, post.*

*Rosborough & Merritt* and *J. G. Sutherland,* for appellants.

The powers of the trustees are limited by the terms in which they are conferred, and must be strictly pursued, (*Martin* v. *Farnsworth,* 49 N. Y. 555,) and must be construed with reference to the subject matter of the trust. *Taylor* v. *Harlow,* 11 Barb. 232; 2 Story's Eq. Jur. § 1,276.

Cook's authority was necessarily more limited than that of the trustees, since they could not assign nor in any way transfer the trust, and parties dealing with him were charged with notice of this double limitation. A principal is not bound by an appearance of authority assumed by a special agent. 1 Parsons on Contr. 44.

Parties dealing with agents or trustees in respect to trust property, can acquire no rights where they have notice or means of knowledge that such agents or trustees are abusing their trust. *Duncan* v. *Joudon,* 15 Wall. 165; *Nixon* v. *Palmer,* 8 N. Y. 308; *Seymore* v. *Wyckoff,* 10 N. Y. 113; *Rowan* v. *Hyatt,* 45 N. Y. 138.

It was no part of the functions or duties of the trustees for the debenture holders to engage in mining, or to attempt to purchase or pay other debts of the company, or to pay Wells, Fargo & Co.'s debt to Smith; these claims were all foreign to the trust.

Section 260 of the code changes the effect of a mortgage upon the legal title, which now remains in the mortgagor, vesting in the mortgagee a lien, which is a mere equity, and follows the debt which is secured. No matter what the form of the instrument may be, if the transaction is one of security it has, so far as the legal title and right of possession are concerned, all the attributes of a mortgage, and will be treated as such. *McMillan* v. *Richards*, 9 Cal. 365; *Pierce* v. *Robinson*, 13 Id. 125; *Lodge* v. *Turman*, 24 Id. 385; *Eaton* v. *Whiting*, 3 Pickering, 490; *Goodenow* v. *Ewer*, 16 Cal. 461; *Dutton* v. *Washauer*, 21 Id. 609; *Nagle* v. *Macy*, 9 Id. 249; *Mafferty* v. *Maier*, 13 Id. 13; *Koch* v. *Briggs*, 14 Id. 342; *Kidd* v. *Temple*, 22 Id. 255.

A difference between an ordinary mortgage and a deed of trust is recognized, as to the mode of foreclosure and the right of redemption; but on the material question here, there is no difference as to the effect of the instruments on the legal title. In either case a foreclosure and sale is necessary to pass the legal title, and the lien of both may be discharged in the same way, by an entry on the margin of the record, without a reconveyance. (Act concerning conveyances, § 32.) The power of sale contained in a trust deed, which is the chief difference, does not change the character of the instrument as a mortgage. *Eaton* v. *Whiting*, 3 Pick. 490. Strike out this power, and it would still be a mortgage.

A sale under the power is intended to operate as a foreclosure. 3 Parsons on Contr. 421.

*Bennett & Harkness*, for respondents.

On the 19th of August, 1872, the Mammoth Copperopolis Company made, to the defendants, a trust deed, authorizing

them to take possession on default and sell the property, and in the meantime, before sale, to carry on the business and work the property. This embraces the moveable as well as the real property.

The deed conveyed the legal title. *Koch* v. *Briggs*, 14 Cal. 257; *Thompson* v. *McKay*, 41 Cal. 221; *Fuquay* v. *Stickney*, 41 Cal. 583.

August 13, 1874, the defendants gave Cook a power to take possession and do all things proper to be done, as effectually as the trustees could or might do. What the trustees could do appears by the trust deed.

Any expenses incurred in obtaining possession of the property, or in making reasonable preparation for working it, are a charge under the trust. The power in the trust deed in effect embraces such expenses.

The plaintiff Matthews was retained to superintend the working of the property under the trustees. He advised with Cook from time to time about working the mine, and was prevented from seeking other employment, and the agent of defendants settled his claim for $500.

EMERSON, Justice, delivered the opinion of the court:

The plaintiff claims for three distinct demands, one of which accrued to him; the others accrued to other persons, and were assigned to him.

The smaller one, assigned to him by Bennett & Whitney, was for services rendered by them as attorneys, partly in defending suits against the Mammoth Copperopolis of Utah (limited), and partly in advice to Cook, who was an agent of the company, and also of the defendants in respect to two distinct trusts, referred to in the opinion given in *Kahn et al.* v. *Hamilton et al.*

Mr. Bennett, as a witness, says: Bennett & Whitney "rendered no service to enforce the first debenture mortgage," and Cook testified that he employed them, and they rendered legal advice relative to his power of liquidating debts. He paid

them on account of previous services for the company $1,050, and $260 to apply on their account for services rendered at his request. He paid these amounts out of the second debenture funds mentioned in the opinion above referred to.

The account which accrued to the plaintiff was made solely on Cook's retainer for work at the company's mine. Cook took possession of the mine under a title derived through a Marshal's deed, and he procured it with the second debenture funds, and for the purposes of that trust.

The other demand, which accrued to Smith, was originally a demand against Wells, Fargo & Co. Cook assumed it, on the debtors refusing to pay it, as he testifies, because he had to agree to pay it " to get possession of the property," the mine.

The defendants, as trustees for the first debenture holders, are not liable for either of these claims, for they do not appear to have arisen in connection with any business pertaining to that trust.

All these claims have no relation to the defendants, except through Cook, and he was agent for them only in their fiduciary capacities; they are not liable unless there is some ground for charging them as trustees of the second debenture funds. Their trust began and ended with that fund and so did Cook's agency. He had no authority to create or assume any debts to be paid by his principals, except out of that fund, and since that fund has been wholly expended we can perceive no ground for holding them responsible.

Judgment is reversed, with costs.

BOREMAN, A. J., concurs.

SCHAEFFER, C. J., dissents.